**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LEITHBRIDGE CO.** d/b/a Kurfiss Sotheby's International Realty <br><br> v. <br><br> **GREENWICH INSURANCE COMPANY** | **CIVIL ACTION** <br><br> **NO. 19-5840** |

**Baylson, J.**                                                                                                                        **June 2, 2020**

**MEMORANDUM**

**I.      Introduction**

This case concerns insurance coverage. A lawsuit filed, in Pennsylvania state court, alleges that Leithbridge Company ("Leithbridge") enabled the theft of hundreds of thousands of dollars of its clients' money by negligently safeguarding the clients' personal information. Leithbridge wants its insurer, Greenwich Insurance Company ("Greenwich"), to defend and indemnify it, and sued for a declaratory judgment that Greenwich owes it duties of defense and indemnification. Greenwich, citing a policy exclusion exclusion for claims "based on or arising out of the conversion … misappropriation or improper use of funds," insists that it owes Leithbridge no such duties. Now, Leithbridge and Greenwich have brought cross-Motions for Judgment on the Pleadings. Because the exclusion applies, Defendant's Motion for Judgment on the Pleadings will be GRANTED, and Plaintiff's DENIED.

1

**II.    Background**

    a.   The Underlying Action

In June of 2018, Timothy Yanka and Polly W. Nessa ("Underlying Plaintiffs") sued Leithbridge in the Court of Common Pleas of Bucks County (the "Underlying Action"). ECF 1-1 ("Compl.") ¶¶ 4–5. Per the most current complaint in the Underlying Action, the Underlying Plaintiffs allege that Leithbridge "had a duty to use due care to safeguard the[ir] confidential personal and transactional information … and failed to do so," which was "the direct and proximate cause … of the conversion of their funds." Id. ¶ 9.

More specifically, Underlying Plaintiffs allege the following. Leithbridge is a franchisee of Sotheby's International Realty. Compl. Ex. B ("Underlying Am. Compl.") ¶¶ 2–3. Underlying Plaintiffs bought a home through a Leithbridge agent in 2017. Id. ¶¶ 5–6. Shortly before closing, their agent advised them to expect to hear directly from the title company about their closing. Id. ¶ 6. Underlying Plaintiffs then received an email purporting to be from their title company instructing them to deposit the balance of purchase money and closing costs—some $390,343.61—by wire transfer to a particular bank account. Id. ¶ 7–8. Underlying Plaintiffs completed the wire transfer only to discover that they had been scammed and almost all their funds were unrecoverable. Id. ¶ 9–10.

The sole remaining claim in the Underlying Complaint is Count One (the "Underlying Claim"). See Compl. Ex. C. In Count One, the Underlying Plaintiffs allege that Leithbridge was negligent in safeguarding their personal information, and that because of that negligence, "the confidential personal and transactional information of the plaintiffs fell into the hands of scammers, who were thus enabled to perpetrate a fraud upon plaintiffs and steal their purchase

2

money." Underlying Am. Compl. Count 1 ¶ 3. But for the negligence of [Leithbridge] … the conversion of their funds would not have occurred." Id. Count One ¶ 4.

    b. <u>The Insurance Policy</u>

Leithbridge is the named insured under a Real Estate Professional Errors and Omissions Policy (the "Policy") with Greenwich which covers "sums … that the insured becomes legally obligated to pay as damages and claims expenses by reason of an act or omission including personal injury in the performance of real estate services by the Insured." Compl. Ex. A 1, I(A). Per the Policy, "Real Estate Services means those professional services performed by others in the Insured's capacity as a real estate agent" or in other roles. Id. III. There is no dispute that the Underlying Claim is a claim based on "an act or omission … in the performance of real estate services" by Leithbridge.

Of the Policy's numerous exclusions, one is relevant here. Exclusion D(1) forecloses Greenwich's obligation to "defend or pay any claim … based on or arising out of … the conversion, commingling, defalcation, misappropriation or improper use of funds or other property." Id. IV(D)(1).

    c. <u>The Insurance Dispute</u>

Leithbridge reported the Underlying Action to Greenwich on or about July 18, 2018. Compl. ¶ 10. Greenwich denied coverage. Id. ¶ 11.

Leithbridge sued Greenwich in the Court of Common Pleas of Bucks County some time later, in November 2019. ECF 1 ¶ 1. Greenwich removed it to this court on December 12, 2019. ECF 1. Following an unrecorded Rule 16 telephone conference on January 15, 2020, the Court ordered the parties to file their motions for judgment on the pleadings by February 17 and their

3

responses to the other party's motion by March 16. ECF 7. Accordingly, Leithbridge filed its Motion on February 11, ECF 8, and Greenwich filed its own Motion on February 17, ECF 9. Both parties filed responses on March 16. ECF 10 (Leithbridge), 11 (Greenwich). Greenwich also filed a reply brief on March 23. ECF 12.

### III. Legal Standard

Federal Rule of Civil Procedure 12(c)[1] provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate only when "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005). When considering a motion for judgment on the pleadings, a court "must accept as true all facts presented in the complaint and answer and draw all inferences in favor of the non-moving party[.]" Bedoya v. Am. Eagle Express Inc., 914 F.3d 812, 816 n.2 (3d Cir. 2019) (citing Zimmerman v. Corbett, 873 F.3d 414, 417–18 (3d Cir. 2017)).

To decide a motion for judgment on the pleadings, like a motion to dismiss, courts consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and, where appropriate and necessary, "an undisputedly authentic document that a defendant attaches as an exhibit to [the motion] if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

---

[1] On April 24, the Court notified the parties that, as there appeared to be facts outside the pleadings at issue, it would treat the Motions as cross-Motions for Summary Judgment and requested statements of any disputed facts. ECF 13. Defendant submitted a statement on May 8, 2020. ECF 14. Plaintiff submitted no statement. As explained below, the Court need not refer to any disputed facts in resolving this case. Therefore it will proceed to resolve the Motions as cross-Motions for Judgment on the Pleadings, as they were filed.

4

## IV.     Discussion

There is no dispute as to the validity or contents of the Policy.  Nor is there any dispute that Leithbridge timely reported the Underlying Action and properly requested defense and indemnification.  The only dispute is over whether the Policy covers the Underlying Action.  That dispute can be settled by analyzing only one issue: whether Exclusion D(1) forecloses coverage for the Underlying Action.[2]  Pennsylvania law dictates that it does.  Greenwich, therefore, has no obligation to defend or indemnify Leithbridge in the underlying action.

   a.  Interpretation of Insurance Policies

"The interpretation of an insurance policy is a question of law."  Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006) (citing 401 Fourth Street v. Investors Ins. Co., 879 A.2d 166, 170 (Pa. 2005)).  Courts may therefore dispose of such cases on motions for judgment on the pleadings where the sole issue is the interpretation of the policy.

There are several well-recognized principles under Pennsylvania law that courts should utilize in interpreting the legal meaning of terms in an insurance policy. Those words in the policy that are of common usage should be "construed according to their natural, plain, and ordinary sense." Kvaerner, 908 A.2d at 897.

---

[2] Greenwich also argues that two endorsements to the Policy, the Data Compromise Endorsement and the CyberOne Endorsement, do not provide or demonstrate the existence of coverage. Greenwich Mem. at 19–21.  Leithbridge never disputes the point.  The Court therefore considers Greenwich's position on the applicability of these endorsements undisputed.  Cf. Zumbado v. City of Allentown, Civil Action No. 07-CV-02459, 2009 WL 310236, at *6 n.4 (E.D. Pa. Feb. 6, 2009) (Gardner, J.) (declining to address issue where "defendants have not briefed the issue as required by Rule 7.1(c) of the Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania").

> Our purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. When the language of the policy is clear and unambiguous, we must give effect to that language. However, when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contracts [sic] prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage.

Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007) (internal citations and quotation marks omitted).

For purposes of interpreting the terms of insurance policies for a duty to defend or indemnify, the duty to defend is broader than the duty to indemnify. See USAA Cas. Ins. Co. v. Bateman, Civ. A. No. 07-3700, 2008 WL 4761718, at *4 (E.D. Pa. Oct. 30, 2008) (Baylson, J.). Where an underlying complaint makes at least one allegation that falls within the scope of the policy's coverage, the duty to defend is triggered, even where an insured is ultimately found to be not liable. See Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997) ("If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover.").

In determining whether the underlying litigation falls within the scope of the insurer's duties to defend or indemnify, a court must examine only those factual allegations made within the "four corners" of the underlying complaint. The duties cannot be triggered by allegations outside of the complaint. See Kvaerner, 908 A.2d at 896 ("[A]n insurer's duty to defend and indemnify [must] be determined solely from the language of the complaint against the insured.... [A]n insurer's duty to defend is triggered, if at all, by the factual averments contained in the

6

complaint itself."). Coverage is also not triggered by the skill of a plaintiff's pleadings. Rather, courts must look only at those factual allegations in the complaint, not the legal claims, in considering whether a suit falls within the scope of the duty. Mutual Ben. Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999) ("[T]he particular cause of action that a complaint pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint.").

  b. Exclusion D(1)

Per Exclusion D(1), Greenwich need "not defend or pay any claim: … based on or arising out of … the conversion, commingling, defalcation, misappropriation or improper use of funds or other property …." Leithbridge's complaint and briefing in this case do not dispute that the alleged theft was a "conversion" within the meaning of the policy. In fact, Leithbridge only disputes the application of Exclusion D(1) on one ground: whether the Underlying Action is "based on or arising out of" the alleged conversion. According to Leithbridge, the Underlying Action is based on and arises out of Leithbridge's alleged negligence, not the alleged conversion. Greenwich responds that the Underlying Action is based on and arises out of the alleged conversion because the alleged conversion is the harm the Underlying Plaintiffs supposedly suffered.

Greenwich is correct that the Underlying Action is based on and arises out of the alleged conversion. Under Pennsylvania law, a policy provision containing the phrase "arising out of" is satisfied by "'[b]ut for' causation, i.e., a cause and result relationship." Gen. Refractories Co. v. First State Ins. Co., 855 F.3d 152, 159 (3d Cir. 2017) (quoting Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co., 403 Pa. 603, 170 A.2d 571, 573 (1961)). "[T]his formulation is 'well-settled,' having been applied in numerous insurance law contexts." Id. (quoting Allstate Prop. & Cas. Ins.

7

Co. v. Squires, 667 F.3d 388, 391–92 (3d Cir. 2012)).  An instructive Pennsylvania Supreme Court case is Madison Construction Company v. Harleysville Mutual Insurance Company, 735 A.2d 100, 109–10 (Pa. 1999).  In the underlying action in Madison, the insured's employee alleged that after inhaling hazardous fumes on the insured's construction site, he passed out and fell into a pit, hurting himself badly in the process.  Id. at 102, 107.  The employee sued for negligence, alleging a "failure to warn and protect others from the hazardous situation, to properly ventilate the work site, and to cover the hole where he fell."  Id. at 112 (Nigro, J., dissenting).  The insurer disclaimed coverage, citing a policy exclusion for bodily injury "arising out of" the release of pollutants.  Id. at 102.  The insured argued that the "underlying lawsuit state[d] claims for acts of alleged negligence, such as failure to warn, which do not arise out of" the release of the pollutant.  Id.  The Pennsylvania Supreme Court disagreed.  Id. at 109–10.  Based on the "fundamental averment that … '[the employee] suddenly and without warning *was overcome by the fumes*, causing him to become dizzy and pass-out [sic],'" the Pennsylvania Supreme Court concluded that, "regardless of the language chosen by the [underlying] plaintiff, the plaintiff's "injuries 'arose out of' the release of the irritating fumes at the construction site."  Id.  Here, Leithbridge is arguing, just like the insured in Madison, that the underlying action arises out of its "negligence."  But, just like the pollutant release was unavoidably a basis of the underlying plaintiff's personal injury claim in Madison, the alleged theft of the closing funds is unavoidably a basis of the Underlying Plaintiffs' claim here.

Thinking in terms of the basic elements of negligence makes the point even clearer.  "To demonstrate negligence, a plaintiff must establish [1] that the defendant owed a duty of care to the plaintiff, [2] that duty was breached, [3] the breach resulted in the plaintiff's injury, and [4] the

8

plaintiff suffered an actual loss or damages." Kinney-Lindstrom v. Med. Care Availability & Reduction of Error Fund, 73 A.3d 543, 563 (Pa. 2013) (citing Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (2009)).  In the Underlying Claim, the alleged conversion of the closing funds is the fourth element of negligence, actual loss or damage.  Without the alleged conversion, there is no loss or damage.  With no loss or damage, the Underlying Plaintiffs have no negligence claim.  Underlying Plaintiffs' negligence claim, therefore, is unavoidably "based on" the alleged conversion.

Leithbridge's argument is essentially that the Court should look only to whether the alleged conversion demonstrates the second element of a negligence claim, breach of duty.  However, this is not the law of Pennsylvania.  In assessing whether an underlying negligence claim "arises from" a particular event for insurance purposes, the event may be independent of the alleged breach of duty.  Madison, 735 A.2d at 109–10; but see QBE Ins. Corp. v. M & S Landis Corp., 915 A.2d 1222, 1229 (Pa. Super. Ct. 2007) (applying "assault and battery" policy exclusion, concluding that claim alleging that bar, *inter alia*, negligently trained employees, leading to assault and battery that killed patron, did not "arise from" the assault and battery); Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh v. Nat'l Union Fire Ins. Co. of Pittsburgh, 709 A.2d 910, 916 (Pa. Super. Ct. 1998) (applying "assault and battery" policy exclusion, holding that claim alleging that school district's negligence led to student's molestation did not "arise from" the molestation).  In Madison, the underlying plaintiff alleged that the insured was negligent in various ways: it failed to warn him and his coworkers, it negligently failed to secure the pit he fell into, and it negligently failed to properly ventilate the work site.  Id. at 112 (Nigro, J., dissenting).  In none of these theories did the underlying plaintiff allege that the insured's breach of duty was the release of fumes.

9

Regardless, the Pennsylvania Supreme Court held that the pollution exclusion applied to bar coverage for each of the underlying plaintiff's negligence claims, "regardless of the language chosen by the plaintiff" in framing the claims. Id. at 110. Indeed, it so held over two directly contrary dissents. Id. (Cappy, J., dissenting) ("[H]e would not have suffered those injuries had the construction site been properly protected. Thus … I would hold that the pollution exclusion does not bar coverage in this instance."); id. at 112 (Nigro, J., dissenting) ("Given the fact that the negligence claims … are not premised upon [the insured]'s dispersal of the fumes emanating from the curing agent … I believe that the pollution exclusion is not applicable …."). Had the court held otherwise, well-represented underlying plaintiffs could often find ways to plead around policy exclusions. Leithbridge's argument therefore fails.

Granted, Leithbridge cites two Pennsylvania Superior Court cases that appear to take its view of the law. See QBE Ins. Corp., 915 A.2d at 1229; Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh, 709 A.2d at 916. But one of these cases, Board of Public Education, predates Madison, and the other, QBE, neither applied nor cited Madison.

This Court must follow Madison's clear rule. Under Madison, the Underlying Action is within the scope of Exclusion D(1). And because the Underlying Action is within the scope of Exclusion D(1), Greenwich does not owe Leithbridge a duty of defense or of indemnification.

## V.  Conclusion

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings will be GRANTED, and Plaintiff's DENIED. An appropriate order follows.

O:\CIVIL 19\19-5840 Leithbridge v Greenwich Ins Co\19cv5840 Memo re x-MJOP.docx